*840 OPINION.
Smith:
1. The taxpayer alleges error on the part of the Commissioner in disallowing the deduction from 1918 gross income of $121 spent for tickets of admission to entertainments which were sent to him by his customers to relieve them from a part of .the burden which they were under in buying such tickets. The evidence shows that it was a common practice for wholesale liquor dealers to take from customers a certain number of tickets of admission which the customers felt compelled to take in order to retain the good will of the people of the community in which they lived. In the light of the evidence, we are of the opinion that the amount spent in the purchase of such tickets constituted an ordinary and necessary expense of the taxpayer in the conduct of his liquor business and as such was deductible from gross income.
2. The Commissioner amended the taxpayer’s income-tax return for 1919 by adding $6.51 to both the gross income and the net income, representing the amount of income tax paid at the source by cor *841 porations which bad issued bonds with a tax-free covenant clause, the $6.51 representing the 2 per cent normal tax paid by the obligors upon coupons of bonds received and cashed by the taxpayer during the year 1919. The action of the Commissioner in adding the $6.51 to the taxpayer’s gross and net income was in error. Appeal of Mary Clark Kling, 1 B. T. A. 1048; Duffy v. Pitney, 2 Fed. (2d) 230.
• 3. In making his returns of income for 1918 and 1919, the taxpayer computed profits upon the sale of warehouse receipts by deducting from the amount realized on the sale the cost thereof plus the carrying charges and sales commission. This was the method of computation used even in cases where the warehouse receipts had been purchased prior to March 1, 1913. Evidence has been introduced to show that certain whiskies purchased by the taxpayer in 1911 at 26 cents a gallon and in 1912 at 31 cents a gallon had a market value at March 1, 1913, of 34 cents a gallon. This increase in value realized upon the sale of the certificates in 1918 and 1919 did not constitute taxable income. Upon the method used by the taxpayer in computing his profit from the sales of warehouse certificates he included in his net income for 1918, $266.85 in excess of the taxable profit and in his return for 1919, $1,574.07 in excess of the taxable profit. In the redetermination of deficiencies in tax these errors should be corrected.
4. The last point relates to the right of the taxpayer to deduct from the gross income of 1918 and 1919 certain amounts for alleged obsolescence of good will of the taxpayer’s liquor business, such claim being predicated upon the fact that the taxpayer was forced by prohibition legislation to discontinue his liquor business on June 30, 1919.
At the hearing, the taxpayer contended that his wholesale liquor business had some good will value at March 1, 1913, and he placed such value at $10,000 or $12,000. We think, however, that the evidence, which consists only of a statement of the earnings of the business for years prior to 1913, before any amount was deducted therefrom for compensation of the taxpayer or for return on his investment, does not prove that the business had a good will with cash value at March 1, 1913. The action of the Commissioner in disallowing the deductions of $16,359.27 and $8,923.23 from the gross .income of 1918 and 1919 for obsolescence of the value of good will must therefore be sustained.
Order of redetermination will be entered on 15 day's notice, under Rule 50.